# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JANUARY 25, 2007
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2005-SC-000894-MR

FINAL

DATE Feb 15, 07 _____

JEFFREY MORNINGSTAR                                             APPELLANT

V.
APPEAL FROM PIKE CIRCUIT COURT
HONORABLE STEVEN D. COMBS, JUDGE
NO. 03-CR-00038

COMMONWEALTH OF KENTUCKY                                         APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A Pike Circuit Court jury convicted Jeffrey A. Morningstar of four counts of second-degree rape. Morningstar committed all the offenses against C.C. over a two-month period in the summer of 2002 when C.C. was 13 years old. In accordance with the jury's recommendation, the trial court sentenced Morningstar to a total of 20 years in prison (five years on each count of second-degree rape to run consecutively). Thus, he appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

Morningstar raises two issues on appeal: (1) that the trial court violated his constitutional right to confront adverse witnesses by improperly applying KRE 412; and (2) that the trial court erred in not allowing into evidence a letter written by the victim in which she accused other men of molesting her. Finding no error, we affirm.

## I. Facts underlying the charges

C.C. and her mother moved in with Morningstar in 2002 when C.C. was 12 years old. Not long after they moved in, C.C. turned 13. Her date of birth is March 19, 1989.

C.C. alleged that Morningstar first raped her in June of 2002 in her bedroom of the home that she shared with her mother and Morningstar. After the first rape, she alleged that Morningstar raped her repeatedly in her bedroom and one time in the back of his sport utility vehicle, which was a Nissan Pathfinder. This rape occurred at the end of July of 2002.

As to the rape in the Pathfinder, C.C. alleged that Morningstar had sexual intercourse with her while she was lying on a pink and white blanket in the back of the vehicle. At the time, she was having her menstrual period, and he ejaculated on her stomach. He used a blue and white blanket to clean the ejaculate from her stomach.

C.C. left Morningstar's home shortly after this last rape, and eventually went to stay with one of her aunts. C.C. disclosed the rape to her aunt on that visit, and her aunt called the Kentucky State Police. Morningstar gave the police his consent to search his vehicle, and the police seized two blankets from the vehicle. C.C. later identified the blankets as those that had been in the vehicle when Morningstar raped her.

Melissa Brown, a forensic specialist with the KSP, tested the two blankets for the presence of blood, semen or saliva. Her testing identified the presence of multiple semen stains and human blood on the pink and white blanket. She chose one of the semen stains and the blood stain for DNA analysis and submitted them for testing along with blood samples taken from C.C., her mother, and Morningstar. Brown also tested the blue and white blanket and identified multiple semen stains. She chose one of the

-2-

semen stains for DNA analysis and submitted it for testing. Fairfax Identity Laboratories (FIL) in Fairfax, Virginia conducted the DNA tests.

Danielle Honig, a forensic analyst with FIL, conducted the tests of the items and samples submitted by the KSP. Honig determined that the blood on the pink and white blanket was that of C.C.; however, the semen from that blanket was not Morningstar's. But the semen on the blue and white blanket was Morningstar's.

We will develop additional facts relative to the two issues on appeal in the following sections.

## II. Did the trial court violate Morningstar's constitutional right to confront adverse witnesses by improperly applying KRE 412?

Upon review, we conclude that the trial court did not abuse its discretion in ruling that any cross-examination of C.C. that was outside the scope of an agreement reached by the Commonwealth and counsel for Morningstar regarding evidence of C.C.'s other sexual behavior was excluded under KRE 412(a)(1).

A. Standard of review

Contrary to Morningstar's assertion that our standard of review on this issue is *de novo* because the trial court violated his Sixth Amendment right to confront witnesses and present a defense, the standard of review on evidentiary matters (including exclusions under KRE 412) is abuse of discretion. See Hogan v. Hanks, 97 F.3d 189, 191 (7th Cir.1996), *cert. denied,* 520 U.S. 1171, 117 S. Ct. 1439, 137 L. Ed. 2d 546 (1997) ("Yet although the Supreme Court has frequently held that states must permit cross-examination that will undermine a witness's testimony, it has never held -- or even suggested -- that the longstanding rules restricting the use of specific instances and extrinsic evidence to impeach a witness's credibility pose constitutional problems.")

(internal citations omitted); Partin v. Commonwealth, 918 S.W.2d 219, 222 (Ky. 1996); Hall v. Commonwealth, 956 S.W.2d 224, 226 (Ky. App. 1997), *discretionary review denied*. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." Goodyear Tire and Rubber Co. v. Thompson, 11 S.W.3d 575, 581 (Ky. 2000).

B. Analysis

On direct examination of C.C., the Commonwealth asked: "Were you worried, [C.], about getting pregnant?" C.C. answered, "Yes, ma'am." The questions on direct that followed this question concerned a talk that C.C.'s mother initiated with her about two weeks after the rapes began in which C.C.'s mother discussed starting C.C. on birth control pills. C.C. testified that she remembered being surprised by such a discussion and thinking it was "a little out of the way." C.C. testified that her mother told her that she was at the age when she would start sneaking around.

Believing that the Commonwealth had, with this line of questioning, opened the door to further inquiry into C.C.'s sexual behavior as a means of impeaching her earlier testimony, the first question that defense counsel asked on cross-examination was: "You say that you were worried about becoming pregnant?" C.C. responded, "Yes, sir." The next question was: "In fact, you did get pregnant, did you not?" At this point, the Commonwealth objected and asked for a bench conference.

After a discussion at the bench, the trial court released the jury and heard further argument. Defense counsel advised the trial court that he intended to ask her if she got pregnant, and if she denied it, he was going to ask her if she wrote a letter to someone in which she stated that she was pregnant. Defense counsel apparently had such a letter. The Commonwealth noted that it had never been provided a copy of the letter in

-4-

reciprocal discovery.

Defense counsel argued, in response, that he was using the letter to impeach C.C.'s testimony, therefore he did not have to provide the Commonwealth with a copy before he intended to introduce it because he could not have anticipated what the victim's testimony would be. Moreover, defense counsel argued that while evidence of a pregnancy may be inadmissible under KRE 412(a), KRE 412(b)(1)(A) contains an exception to the exclusion for evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen. Under this exception, defense counsel contended that he was entitled to inquire as to the other semen on the pink and white blanket.

The Commonwealth countered that the questioning pertaining to her pregnancy concerns and the birth control talk was limited to the time period when the rapes were occurring, and not related to the time period following the rapes. And as to the "source of semen" argument, defense counsel was required to comply with certain notice requirements under KRE 412(c), which he had not done.

The trial court found that the manner in which defense counsel asked the question was improper and granted a recess to allow the Commonwealth time to review the letters and talk to C.C. about their context.

After the recess, the trial court stated that it believed that the questioning by defense counsel pertained to information excluded by KRE 412(a)(1). Because the jury was left with the impression that C.C. became pregnant by someone, including possibly Morningstar, however, the Commonwealth desired to clarify the facts surrounding the pregnancy. The Commonwealth advised the trial court that it had reached an agreement satisfactory to both parties:

-5-

> [W]hen the witness resumes that stand in front of the jury, [Mr. Owens] is going to ask her a question to say, "Did you ever tell somebody else or write down to somebody else that you were pregnant?" And we anticipate her answer to that question would be, "Yes," whereupon Mr. Owens would then ask, "Did you ever claim that Jeffrey Morningstar was the source of that pregnancy?" And we anticipate that her answer to that question would be, "No." And that would conclude that line of questioning regarding pregnancy and the victim. We think that's sufficient and the parties have agreed to that…[W]e believe that we're entitled on re-direct of the witness, then, to inquire as -- of her, when such statements regarding pregnancy by her were made. And we anticipate her answer to that question is going to be well after the events that are the subject of this trial, in fact, when she was 15 years old, whereas the events of this trial occurred when she was 13.

Defense counsel reserved his right to call her on avowal, which the trial court allowed him to do on the following day. And then defense counsel stated that the parties had also reached an agreement as to how he would inquire of the victim regarding the presence of unidentified semen on the pink and white blanket. He would ask C.C. if she knew where the unidentified semen might have come from, to which she would reply that she did not know, and that would be the extent of questioning.

The avowal testimony established that there was a time about one or two years after the alleged rapes that C.C. believed that she was pregnant. The father was not Morningstar. As to the birth control talk that C.C.'s mother initiated, C.C. denied that older boys were coming to the house to see her at the time her mother initiated the talks, although she admitted to having a boyfriend during the time period of January through July of 2002. The trial court reiterated its ruling that the evidence was excluded under KRE 412(a)(1).

On appeal, Morningstar focuses on C.C.'s avowal concerning the surrounding circumstances of the birth control talk. He argues that the Commonwealth should not have been allowed to bring up concerns of pregnancy and make the victim look

-6-

innocent and the mother look like Morningstar's accomplice, then use KRE 412 to prevent his constitutional right to confront adverse witnesses. He contends that he should have been allowed to question the witness to show an alternative reason for why C.C.'s mother talked to her about birth control, that reason being that Morningstar and C.C.'s mother suspected that older boys were coming to the house when she was left alone. Morningstar argues that the trial court gave the Commonwealth the opportunity to ask the what, when, and where of C.C. regarding the circumstances surrounding the birth control talk, but denied Morningstar his constitutionally protected right to ask why.

This argument is curious given the fact that on avowal, defense counsel did not initially ask C.C. about the birth control talk with her mother. Defense counsel focused on letters in Morningstar's possession that C.C. had written to her friends at least one to two years after the rapes in which she expressed her belief that she was pregnant. C.C. testified that she thought she was pregnant at one time and did not deny writing the letters, although she did not recall all of them, and defense counsel never presented them to her. Having put in that limited testimony, defense counsel informed the court that that was all he had by way of avowal, at which point the Commonwealth requested the opportunity to ask a few questions.

The Commonwealth confirmed with C.C. that the timing of the letter was well after the rapes, and that the father was a young man that she had been dating -- not Morningstar. The Commonwealth concluded by reiterating that C.C.'s mother had initiated the birth control talk. It was at this point that Morningstar turned his attention to the birth control talk, which now seems to be his only contention on appeal.

At any rate, having reviewed testimony from the trial, we cannot agree that by excluding certain testimony under KRE 412(a)(1) the trial court denied Morningstar his

opportunity to present his theory as to why C.C.'s mother had this talk with her when she did. C.C.'s mother testified that she and Morningstar found used condoms in C.C.'s room and that it had been rumored that C.C. was sneaking around with older boys. On cross-examination, the Commonwealth asked C.C.'s mother if she had had a conversation with C.C. about birth control pills, and she said, "Yes." The Commonwealth asked her when that talk occurred, and she said that it occurred right after school let out in late May or early June of 2002. Defense counsel did not ask C.C.'s mother any additional questions about this talk. From this testimony, the jury could infer that C.C.'s mother had this talk with her because she had reason to believe that C.C. was having sexual intercourse in her room with older boys with whom she was sneaking around -- which is essentially what C.C. testified that her mother told her.

We believe that under these circumstances, the trial court did not abuse its discretion in excluding additional evidence as to C.C.'s belief that she was pregnant one to two years after the rapes by someone other than Morningstar. Such evidence was not admissible under KRE 412(a)(1) as it only proved that she engaged in other sexual behavior. And as for Morningstar's argument that the trial court denied him the opportunity to present his theory on the birth control talk, we conclude that the record refutes this contention.

### III. Did the trial court err in not allowing into evidence a letter written by the victim in which she accused other men of molesting her?

As there was no motion to admit the letter, this issue is not preserved for our review.

Midway through trial, the trial court signed an order which released the juvenile court and family court records of C.C. and her mother (whose parental rights to C.C.

-8-

had been terminated just the month before) to defense counsel. In searching these records, defense counsel discovered a letter filed June 9, 2003, that was written in C.C.'s handwriting to the family court judge and signed by C.C. In the letter, C.C. alleged that her father molested her when she was three years old; that her mother's ex-husband molested her; that the ex-husband's uncle raped her; and that her mother's boyfriend raped her.

Upon discovering this letter, defense counsel recalled C.C. in his case-in-chief and asked her if anyone else had ever molested her. C.C. testified that no one had molested her other than Morningstar. She further testified that she was told that she was molested by her father, but later told that he did not molest her. She also denied that her former step-father and his uncle had molested her. Defense counsel then asked her about the letter. C.C. testified that she did write such a letter when she lived with one of her relatives. The Commonwealth objected to being provided with the letter in an untimely manner, and the trial court conducted a bench conference.

After reviewing the letter, the trial court noted that it would have never allowed the letter into evidence as it was highly prejudicial. In fairness, the Commonwealth requested that it be allowed to review the letter and confer with C.C. about the circumstances of the letter. The trial resumed with defense counsel's cross-examination regarding the letter. C.C. explained that she copied the contents of the letter from another letter written by her aunt and her cousin. They told her that it would assist her in the family court proceedings in showing a side that the judge had not seen. She admitted that the contents of the letter stated that she was molested by her father, her step-father, and her step-father's uncle.

Morningstar now claims that the trial court abused its discretion in not allowing

him to place the letter into evidence as this letter was essential to his case because it showed that C.C. has accused every other man having a relationship with her mother of molesting her. This theory, however, was not presented to the trial judge; thus it was not preserved for review. See Kennedy v. Commonwealth, 544 S.W.2d 219, 222 (Ky. 1976). Nor did defense counsel either make a motion to admit the letter into evidence or to admit avowal testimony to authenticate the document and tender it to the trial court as an avowal exhibit. See Garrett v. Commonwealth, 48 S.W.3d 6, 15 (Ky. 2001) ("While KRE 103(a)(2) and RCr 9.52 are both couched in terms of preserving oral testimony as opposed to real evidence, a fair reading of those rules requires avowal testimony to authenticate the document or object, then a tender of the document or object to the court as an avowal exhibit.") The copy of the letter that is attached to Morningstar's appellate brief is not in the trial court's record, and is hardly legible.

The preservation issue notwithstanding, we believe that defense counsel effectively impeached C.C.'s testimony when he read C.C.'s allegations from the letter into evidence by cross-examination.

We affirm the judgment of the Pike Circuit Court.

All concur.

COUNSEL FOR APPELLANT:

Stephen W. Owens
P.O. Box 1426
Pikeville, KY 41502


COUNSEL FOR APPELLEE:

Gregory D. Stumbo
Attorney General of Kentucky
Room 118, Capitol Building
Frankfort, Ky 40601

Michael A. Nickels
Assistant Attorney General
Office of Attorney General
1024 Capital Center Drive
Frankfort, KY 40601